Arthur OATTS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0805–CR–447.

Court of Appeals of Indiana.

Jan. 20, 2009.

---

Michael R. Fisher, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Karl M. Scharnberg, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

BROWN, Judge.

Arthur Oatts appeals his conviction for child molesting as a class C felony.[1] Oatts raises two issues, which we revise and restate as:

 I. Whether the trial court abused its discretion by excluding evidence that the victim had previously viewed an allegedly pornographic

---

1. Ind.Code § 35–42–4–3 (2004) (subsequently amended by Pub.L. No. 216–2007, § 42 (eff. July 1, 2007)).

video and had previously been molested; and

II. Whether the trial court erred by responding to jury questions during deliberations after the jury had indicated that it had arrived at a decision.

We affirm.

The relevant facts follow. In March 2007, A.S., who was born on February 28, 1999, went to visit her grandparents, Oatts and Carla Oatts ("Carla"). Oatts took A.S. to a restaurant to get some food. The two of them took the food back to the house and ate it on Oatts's bed. After A.S. finished eating, she fell asleep.

Later, A.S. woke up because Oatts was rubbing her butt with his hand. Oatts then started to rub A.S.'s chest. Oatts, who was wearing only his underwear, then pulled A.S. closer, kissed her on her forehead, and put her hand on his "private" over his clothes. Transcript at 165. A.S. "[k]ept taking" her hand off of Oatts's "private," but Oatts "kept putting it back on." *Id.* at 166. A.S. then got up to use the bathroom, came back, and said, "I miss my mommy," and Oatts said, "[Y]ou'll be all right." *Id.* A.S. lay down for a minute and then went to her bedroom and fell asleep.

Later, Kristina Smith, A.S.'s mother, told A.S. that A.S. was going to spend Easter with her grandparents. A.S. said that she did not want to go, started crying, and eventually told her mother that she did not want to go to her grandparents' house "[b]ecause her grandpa was doing things to her that he shouldn't been [sic] doing." *Id.* at 220. A.S.'s mother called the police.

The State charged Oatts with three counts of child molesting as class C felonies. On June 19, 2007, the trial court conducted a child hearsay hearing. During this hearing, Oatts's attorney questioned A.S. about a videotape she had seen a portion of several years earlier in which there were "girl's [sic] touching boy's [sic] pee-pees in the videotape." [2] *Id.* at 20. Oatts's attorney also questioned A.S. regarding allegations against Tony.[3] The prosecutor objected to the line of questioning and stated, "We're talking about reliability of statements with regard to Arthur Oatts, not Tony or other videotapes or anything." *Id.* at 21. The trial court sustained the prosecutor's objection.

On January 15, 2008, the State filed a motion in limine requesting that Oatts, his counsel, and witnesses be instructed not to mention any testimony, questions, or statements by attorneys or witnesses in violation of Ind. Evidence Rule 412. At the beginning of the jury trial on January 16, 2008, the State brought up its motion in limine. Oatts's attorney argued that the State was attempting "basically to eliminate my opportunity to let the jury know that there is ... knowledge on the part of this young lady that would allow her or possibly cause her to have an idea, create an idea in her mind because of her past experience where she knows she can get something accomplished if she mentions these specific acts, and she's able to discuss it because she's seen it before or it's happened to her before, and so I think that it's very relevant for and very important for my client that he be able to bring into evidence the fact that there was another individual who did in fact molest her." *Id.* at 118–119. Oatts's attorney also stated

---

**2.** A.S. thought the videotape was a children's movie and played a "little bit" of the video before A.S.'s mother discovered A.S. watching it and told her to turn it off. Transcript at 20.

**3.** The record does not provide a last name for Tony. The record is also unclear as to the circumstances surrounding any encounter between Tony and A.S.

that the "similarities of the allegations are very, very close" and the current allegation "is that Mr. Oatts touched [A.S.] while they were in bed together, and in fact Tony touched [A.S.] while she was in bed." *Id.* at 120.

The trial court granted the State's motion in limine. Specifically, the trial court ruled that Oatts was not allowed to bring up the fact that A.S. was previously molested or the fact that A.S. had watched a sexual video. After voir dire, Oatts's attorney argued that "there was a juror that was stricken, however her comment which I think is—is the reason counsel struck her, little girls just don't make up things unless they have some experience with it." *Id.* at 146. Oatts's attorney also argued that the trial court's ruling on the State's motion in limine eliminated his ability to argue that A.S. had prior experience. The trial court noted that Oatts's objection to the trial court's prior ruling on the motion in limine was preserved for the record.

When the parties were reviewing the verdict forms, Oatts's attorney argued that the instructions for Counts I, II, and III were identical and did not allege a specific act and asked, "how can he be found guilty of the same thing three times?" *Id.* at 209. Oatts's attorney asked that Counts II and III be dismissed and that only Count I be presented to the jury. The prosecutor argued that A.S.'s testimony supported three separate acts of molestation. The trial court held that "the jury has heard evidence of three separate touching[s] which they may determine is sufficient evidence under the elements charged in each count" and denied Oatts's motion to dismiss Counts II and III. *Id.* at 212.

During deliberations, the jury asked the trial court, "[W]hat specific touching is each count attributable to? Is count one bottom touching? Is count two breast touching? Is count three penis touching?" *Id.* at 341. The trial court immediately contacted counsel via telephone and referred the jury back to their instructions. Specifically, the trial court sent the bailiff back into the jury room with the statement that counsel were not presently available such that the trial court could directly answer the jury's questions, that they had their instructions, and they could refer to their instructions to determine whether or not the instructions assisted them with their questions. *Id.* at 342.

The jury then asked, "[M]ay we please view the statements given by both the victims and the defendant with the detective." *Id.* at 341. The court determined that the jury had a "second request regarding the first question," and brought counsel back together for a "face-to-face" with the trial court regarding the jury's question. *Id.* at 342.

After some discussion, the trial court sent the bailiff to retrieve Title 34 of the Indiana Code so that the trial court could examine Ind.Code § 34–36–1–6. When the bailiff went to look for the statute book, the jury informed the bailiff that "they're done" and "[t]hey just need a [sic] answer to their question." *Id.* at 354. Oatts's attorney stated, "Judge, what I'm suggesting was—what I asked for just dismiss counts two and three, then we don't have the confusion, then it's either— they've reached a decision, right? So it's either guilty or not guilty. So it's not a question how do we fill out the forms, and then that's it. It's over. There's a verdict, and it's going to happen in five minutes if the State dismisses counts two and three." *Id.* at 355–356.

The trial court proposed "that regards to this question, what specific touching is each count attributable to, that the Court answer their question with [']it is the job of the jury to determine how to complete

the verdict form for each of the three counts.[']" *Id.* at 366. Oatts's attorney objected on the basis that "the jury has very clearly indicated they have not reached an impasse, and any information that would be sent without stipulation of the parties violates the statute that essentially says that the Court can only provide additional information if the jury has indicated they've reached an impasse." *Id.* at 367–368. After some discussion, the trial court indicated that it was going to instruct the jury "regarding their question, of what specific touching is each count attributable, the answer—the Court's answer is that it is the job of the jury to determine how to complete the verdict forms for each count charged."[4] *Id.* at 367.

The jury found Oatts guilty as charged. The court entered judgment only on the first count due to double jeopardy concerns. The court sentenced Oatts to six years with five years suspended to probation.

## I.

◼ The first issue is whether the trial court abused its discretion by excluding evidence that A.S. had viewed an allegedly pornographic video years earlier in which there were "girl's [sic] touching boy's [sic] pee-pees in the videotape" and that A.S. had been previously molested. *Id.* at 20.

The trial court has broad discretion in ruling on the admission or exclusion of evidence. *Sallee v. State,* 785 N.E.2d 645, 650 (Ind.Ct.App.2003), *trans. denied, cert. denied,* 540 U.S. 990, 124 S.Ct. 480, 157 L.Ed.2d 385 (2003). A trial court's ruling on the admissibility of evidence will be disturbed on review only upon a showing of an abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's ruling is clearly against the logic, facts, and circumstances presented. *Platt v. State,* 589 N.E.2d 222, 229 (Ind.1992). "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and ... [i]n case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked." Ind. Evidence Rule 103.

Oatts argues that the trial court abused its discretion by excluding the evidence that A.S. had watched the video and had been previously molested. Specifically, Oatts argues that: (A) the exclusion of the evidence did not serve the purpose of Ind. Evidence Rule 412;[5] and (B) the exclusion of the evidence violated Oatts's right to cross examine witnesses guaranteed under the Sixth Amendment of the United States Constitution and Article 1, Section 13 of the Indiana Constitution.[6]

4. The record does not contain the actual answer given to the jury.

5. Ind. Evidence Rule 412(a) governs the admissibility of evidence of past sexual conduct and provides:

In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:
(1) evidence of the victim's or of a witness's past sexual conduct with the defendant;
(2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;

(3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or
(4) evidence of conviction for a crime to impeach under Rule 609.

6. The State argues that Oatts waived review of the trial court's exclusion of this evidence because he did not file a motion proposing to offer this evidence pursuant to Ind. Evidence Rule 412(b)(1). We acknowledge a split on this court regarding whether Oatts waived this issue. *Contrast Sallee v. State,* 785 N.E.2d 645, 651 (Ind.Ct.App.2003) (holding

## A. Ind. Evidence Rule 412

■ Ind. Evidence Rule 412, the Rape Shield Rule, "incorporates the basic principles" of Ind.Code § 35–37–4–4,[7] Indiana's Rape Shield Act.[8] *State v. Walton,* 715 N.E.2d 824, 826 (Ind.1999). Ind. Evidence Rule 412(a) governs the admissibility of evidence of past sexual conduct and provides:

that the defendant's failure to comply with Ind. Evidence Rule 412(b) precluded her from presenting evidence of the victim's past sexual history and resulted in waiver of the issue on appeal), *trans. denied; and Graham v. State,* 736 N.E.2d 822, 826 (Ind.Ct.App.2000) (holding that the defendant's failure to comply with the procedural mandate of Ind. Evidence Rule 412(b) was fatal to his attempt to introduce evidence of prior false rape allegations); *with Sallee v. State,* 777 N.E.2d 1204, 1210 n. 6 (Ind.Ct.App.2002) (rejecting the State's argument that the defendant had waived any claim of error by failing to comply with the procedural requirements of Ind. Evidence Rule 412 and holding that "the requirement that the proponent of the evidence file a written motion ten days prior to trial applies only if the evidence sought to be introduced fits within one of the exceptions to the general rule"), *trans. denied.* We need not address whether Oatts waived this issue because, even assuming that Oatts did not waive this issue, we cannot say that the trial court abused its discretion.

7. Ind.Code § 35–37–4–4 provides, in part:

(a) In a prosecution for a sex crime as defined in IC 35–42–4:
 (1) evidence of the victim's past sexual conduct;

 * * * * * *

may not be admitted, nor may reference be made to this evidence in the presence of the jury, except as provided in this chapter.
(b) Notwithstanding subsection (a), evidence:
 (1) of the victim's or a witness's past sexual conduct with the defendant;
 (2) which in a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded; or

In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:

(1) evidence of the victim's or of a witness's past sexual conduct with the defendant;

(2) evidence which shows that some person other than the defendant com-

(3) that the victim's pregnancy at the time of trial was not caused by the defendant;
 may be introduced if the judge finds, under the procedure provided in subsection (c) of this section, that it is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
(c) If the defendant or the state proposes to offer evidence described in subsection (b) of this section, the following procedure must be followed:
(1) The defendant or the state shall file a written motion not less than ten (10) days before trial stating that it has an offer of proof concerning evidence described in subsection (b) and its relevancy to the case. This motion shall be accompanied by an affidavit in which the offer of proof is stated.
(2) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, and at the hearing allow the questioning of the victim or witness regarding the offer of proof made by the defendant or the state.
 At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant or the state regarding the sexual conduct of the victim or witness is admissible under subsection (b) of this section, the court shall make an order stating what evidence may be introduced by the defendant or the state and the nature of the questions to be permitted. The defendant or the state may then offer evidence under the order of the court.

8. The Indiana Supreme Court has noted that "[t]o the extent there are any differences [between Ind.Code § 35–37–4–4 and Ind. Evidence Rule 412], Evidence Rule 412 controls." *Williams v. State,* 681 N.E.2d 195, 200 n. 6 (Ind.1997).

mitted the act upon which the prosecution is founded;

(3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or

(4) evidence of conviction for a crime to impeach under Rule 609.

In addition to these enumerated exceptions, a common-law exception has survived the 1994 adoption of the Indiana Rules of Evidence. *See Walton*, 715 N.E.2d at 826–828. This exception provides that evidence of a prior accusation of rape is admissible if: (1) the victim has admitted that his or her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. *Id.*

Here, evidence that A.S. viewed an allegedly pornographic video [9] and had been previously molested does not fall into one of the enumerated exceptions of Ind. Evidence Rule 412 or under the common law exception.[10] The Indiana Supreme Court has held that the exclusion of past molestation was not erroneous under Indiana's Rape Shield Statute and Rule. *See Tague v. State*, 539 N.E.2d 480, 482 (Ind.1989) (holding that the trial court did not err in excluding the evidence of possible molestation of the victim by a person other than the defendant and "[v]irginity or the lack thereof has absolutely nothing to do with the crime of child molestation"); *Beckham v. State*, 531 N.E.2d 475, 477 (Ind.1988) (addressing a situation in which the defen-

dant offered to prove the fact that the seven-year-old victim reportedly told his mother that he had previously been molested by another person and the similarity between the physical acts in the two instances and holding that the trial court properly excluded evidence of a prior molestation committed by a different person); *Baughman v. State*, 528 N.E.2d 78, 79 (Ind.1988) (holding that evidence of prior molestation by a different person was the type of evidence which the legislature deemed should be excluded): *Parrish v. State*, 515 N.E.2d 516, 519–520 (Ind.1987) (holding that the trial court properly refused to permit the defendant to question the nine-year-old victim as to whether he had been sexually abused in the past because Indiana's Rape Shield Statute shields the victim of a sex crime from a general inquiry into the history of past sexual conduct). Based upon these cases, we conclude that the trial court did not abuse its discretion under Ind. Evidence Rule 412 by excluding the evidence that A.S. had viewed an allegedly pornographic videotape and had been previously molested.

**B. *Right to Cross Examine Witnesses***

 Oatts next argues that the exclusion of the evidence violated his right to cross examine witnesses under the Sixth Amendment of the United States Constitution[11] and Article 1, Section 13 of the

---

**9.** Oatts argues that "the viewing of the pornographic video should not be considered 'past sexual conduct' with [sic] the meaning of the rule." Appellant's Brief at 6. Oatts does not develop this argument or cite to authority. Consequently, this issue is waived. *See, e.g., Cooper v. State*, 854 N.E.2d 831, n. 1 (Ind. 2006) (holding that the defendant's contention was waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State*, 716 N.E.2d 391, 398 n. 3 (Ind.1999) (holding that the defendant waived

argument on appeal by failing to develop a cogent argument).

**10.** Oatts did not argue to the trial court and does not argue on appeal that evidence of a prior molestation constituted evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded.

**11.** The Sixth Amendment's Confrontation Cause provides that, "[I]n all criminal prosecutions, the accused shall enjoy the right ...

Indiana Constitution.[12] The right to cross examination is not absolute. *Tague v. Richards*, 3 F.3d 1133, 1137 (7th Cir.1993). "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). "Furthermore, the right to confront witnesses 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Tague*, 3 F.3d at 1137 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297 (1973)).

The constitutionality of Indiana's Rape Shield Rule "as applied to preclude particular exculpatory evidence remains subject to examination on a case by case basis." *Williams v. State*, 681 N.E.2d 195, 201 (Ind.1997) (quoting *Tague v. Richards*, 3 F.3d 1133, 1137 (7th Cir.1993)). The Indiana Supreme Court has held that Indiana's Rape Shield Statute does not violate a defendant's Sixth Amendment right to confront witnesses absent a showing of actual impingement on cross examination. *Thomas v. State*, 471 N.E.2d 677, 679 (Ind.1984), *reh'g denied.* Thus, the trial court's exclusion of evidence must not prevent the defendant from conducting a full, adequate, and effective cross-examination. *See Lagenour v. State*, 268 Ind. 441, 444–45, 376 N.E.2d 475, 478 (1978).

There are instances where the application of the Rape Shield Rule may violate a defendant's Sixth Amendment right. *Williams*, 681 N.E.2d at 201. "For example, admission of such evidence may be constitutionally required where the evidence is offered not to show the victim's consent but to establish some other point such as that an injury could have been inflicted by someone other than the defendant." *Id.* (citing *Tague*, 3 F.3d at 1136–38). "It may also be required when the trial court restricts a defendant from giving his own account of the events at issue." *Id.* "And the Sixth Amendment may be implicated when a defendant establishes that the victim engaged in a similar pattern of sexual acts." *Id.* Consequently, to determine whether Oatts's rights were violated, we move beyond a pure rape shield act analysis to consider whether evidence to show the child's pre-existing sexual knowledge is admissible. *See State v. Pulizzano*, 155 Wis.2d 633, 456 N.W.2d 325, 331 (1990) ("Despite the virtue of the general rule that such evidence is inadmissible, however, in the circumstances of a particular case evidence of a complainant's prior sexual conduct may be so relevant and probative that the defendant's right to present it is constitutionally protected. [Wisconsin's rape shield law], as applied, may in a given case impermissibly infringe upon a defendant's rights to confrontation and compulsory process.").

In considering whether the exclusion of the evidence violated Oatts's right of confrontation, we examine both the "effect of the precluded evidence" on Oatts's Sixth Amendment rights and the "state's interests in excluding the evidence at issue." *Tague*, 3 F.3d at 1137–1138. We first address the state's interest in excluding the evidence by noting the policy of Indiana's Rape Shield Rule.

The Rule reflects a policy first embodied in Indiana's Rape Shield Act,

---

to be confronted with the witnesses against him." U.S. CONST. amend. VI.

**12.** Article 1, Section 13 of the Indiana Constitution provides in part that "[i]n all criminal prosecutions, the accused shall have the right ... to meet the witnesses face to face...."

Indiana Code § 35–37–4–4, that inquiry into a victim's prior sexual activity is sufficiently problematic that it should not be permitted to become a focus of the defense. Rule 412 is intended to prevent the victim from being put on trial, to protect the victim against surprise, harassment, and unnecessary invasion of privacy, and, importantly, to remove obstacles to reporting sex crimes.

*Williams,* 681 N.E.2d at 200. *See also Baughman,* 528 N.E.2d at 79 (holding that evidence of prior molestation by a different person was the type which the legislature deemed should be excluded); *Tague,* 3 F.3d at 1139 (recognizing the potential embarrassment of public knowledge of a previous molestation and that the elimination of the risk of embarrassment furthers the state's interest in encouraging children to report cases of molestation so that the perpetrators can be prosecuted).

We now turn to the effect of the precluded evidence on Oatts's Sixth Amendment rights. When considering the effect of the precluded evidence on Oatts's Sixth Amendment rights, we initially determine the relevance of the evidence. *See Borosh v. State,* 166 Ind.App. 378, 383, 336 N.E.2d 409, 412 (Ind.Ct.App.1975) (holding that "only a total denial of access" to "*relevant* and substantial evidence bearing upon the credibility of a crucial witness against the accused" presents a constitutional issue under the Sixth Amendment) (emphasis added); *Gilbert v. State,* 426 N.E.2d 1333, 1337 (Ind.Ct.App.1981) (holding that, because the line of questioning was not relevant to the credibility of the witness and sought information about which the witness had no knowledge, it was not a constitutional violation to sustain the objection).

Oatts argues that the trial court erred by excluding the evidence that A.S. had watched the video and had been previously molested because the evidence was relevant to demonstrate that A.S. had knowledge of the nature of sex acts and the investigative process.[13] We note that Oatts's arguments constitute what some commentators refer to as the sexual innocence inference theory. *See* Christopher B. Reid, *The Sexual Innocence Inference Theory as a Basis for the Admissibility of*

---

13. Indiana courts have previously considered the admissibility of evidence of a victim's past sexual conduct when there was physical or corroborating evidence that sexual contact involving the victim had occurred. *See Steward v. State,* 636 N.E.2d 143 (Ind.Ct.App.1994), *summarily affirmed in relevant part and affirmed in part by,* 652 N.E.2d 490 (Ind.1995), *reh'g denied,* and *Davis v. State,* 749 N.E.2d 552 (Ind.Ct.App.2001), *trans. denied.* Oatts appears to argue that the evidence was relevant based upon *Steward* and *Davis.* In *Steward,* the State presented expert testimony that before the victim reported acts of sexual abuse by the defendant she exhibited behavioral problems common to victims of child sexual abuse and, immediately after reporting such information, that the victim's behavior improved. 636 N.E.2d at 149–150. In *Davis,* the victim's grandmother testified that the doctor informed her on the night of the examination that the victim had been sexually ac-

tive. 749 N.E.2d at 555. *Steward* and *Davis* both addressed the concept of "partial corroboration," which is the theory that "once there is evidence that sexual contact did occur, the witness's credibility is automatically 'bolstered.' " *Steward,* 636 N.E.2d at 149 (quoting *Tague,* 3 F.3d at 1138). "This bolstering evidence invites the inference that because the victim was accurate in stating that sexual contact occurred, the victim must be accurate in stating that the defendant was the perpetrator." *Id.* "Therefore, in such cases, the defendant must be allowed to rebut this inference by adducing evidence that another person was the perpetrator." *Id.* Here, unlike *Steward* and *Davis,* there is no evidence other than A.S.'s testimony that sexual contact occurred. Thus, this is not a situation that involves partial corroboration. Accordingly, we do not find *Steward* and *Davis* instructive because they involved at least partial corroboration.

*a Child Molestation Victim's Prior Sexual Conduct,* 91 MICH. L.REV. 827 (1993).

The theory is based on the premise that because most children of tender years are ignorant of matters relating to sexual conduct, a child complainant's ability to describe such conduct may persuade the jury that the charged conduct in fact occurred. To demonstrate that the child had acquired sufficient knowledge to fabricate a charge against the defendant, the theory reasons, the court should allow the defense to offer evidence that the child acquired sexual experience with someone else before he or she accused the defendant.

*Grant v. Demskie,* 75 F.Supp.2d 201, 213 (S.D.N.Y.1999) (quoting Clifford S. Fishman, *Consent, Credibility, and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior,* 44 CATH. U.L.REV. 709, 806 (1995)), *affirmed by* 234 F.3d 1262 (2nd Cir.2000). Courts have varied in their approach to the sexual innocence inference theory. At least one court has rejected this theory. *See, e.g., State v. Clarke,* 343 N.W.2d 158, 163 (Iowa 1984) (rejecting the theory because it was based on unsubstantiated assumptions and fears about what a jury may infer from the complaining witness's testimony). Other courts have embraced the theory. *See, e.g., Summitt v. State,* 101 Nev. 159, 697 P.2d 1374 (1985) (embracing the theory and holding that the probative value of the evidence must be balanced against its prejudicial effect). *See generally Grant,* 75 F.Supp.2d at 214–216 (discussing the different responses of courts to the sexual innocence inference theory).

The approaches of various courts have been described as follows:

At present, the lower courts are split over the question of whether this theory of logical relevance is potent enough to surmount a rape shield law. Maine, Nevada and New Hampshire courts have embraced this theory. According to one commentator, these liberal decisions represent the trend in the case law. However, there are conservative decisions from Iowa and Michigan rejecting the theory. Furthermore, there is a third, compromise view, followed in such states as Arizona, Massachusetts, and Wisconsin. The courts in these jurisdictions carefully scrutinize the quantum of the probative value of the evidence. Hence, they might grant the accused a right to introduce evidence of the complainant child's sexual contact with a third party if the sexual conduct in question was not only unusual but also strikingly similar to the alleged contact with the accused.

Francis A. Gilligan, Edward J. Imwinkelried & Elizabeth F. Loftus, *The Theory of "Unconscious Transference": The Latest Threat to the Shield Laws Protecting the Privacy of Victims of Sex Offenses,* 38 B.C. L.REV. 107, 140–141 (1996) (footnotes omitted).

The cases following the compromise approach place the burden on the defendant to show that the prior sexual act occurred and that the prior sexual act was sufficiently similar to the present sexual act to give the victim the knowledge to imagine the molestation charge. *See Pulizzano,* 456 N.W.2d at 333 (holding that an offer of proof under the sexual innocence inference theory must show that the prior acts clearly occurred and that the acts closely resembled those of the present case); *State v. Oliver,* 158 Ariz. 22, 760 P.2d 1071, 1077 (1988) (holding that a defendant must show that the victim had previously been exposed to a sexual act and that the prior sexual act was sufficiently similar to the present sexual act to give the victim the experience and ability to contrive or imagine the molestation charge). In the inter-

ests of balancing a defendant's Sixth Amendment rights with the policy behind the rape shield rule, we find the compromise view to be the more enlightened approach and adopt the compromise view of the sexual innocence inference theory. Thus, Oatts was required to show that the prior sexual act occurred and that the prior sexual act was sufficiently similar to the present sexual act to give the victim the knowledge to imagine the molestation charge.[14]

Here, Oatts failed to show that the prior acts closely resembled those in the present case. Oatts's attorney did not proffer any evidence that the prior molestation was similar to the current offense. Oatts's attorney stated that the "similarities of the allegations are very, very close" and the current allegation "is that Mr. Oatts touched [A.S.] while they were in bed together, and in fact Tony touched [A.S.] while she was in bed." Transcript at 120. However, Oatts did not offer specific details of the previous molestation and thus failed to show that the prior molestation was similar to the current offense. We also conclude that Oatts did not offer specific details of the videotape and thus failed to show that the conduct in the videotape was similar to the current offense.

Oatts failed to show that either the prior molestation or videotape were similar to the current offense. Oatts also failed to show that the evidence was relevant or that the probative value outweighed the prejudicial effect. Under the circumstances, we cannot say that the exclusion of the evidence violated Oatts's right to cross examine witnesses under the Sixth Amendment of the United States Constitution and Article 1, Section 13 of the Indiana Constitution. *See Grant,* 75 F.Supp.2d at 217–218 (holding that the trial court did not commit constitutional error by excluding evidence about the prior rape of the ten-year-old victim when she was five years old because the defendant did not proffer evidence that the prior rape was similar to the current incident); *People v. Hill,* 289 Ill.App.3d 859, 225 Ill. Dec. 244, 683 N.E.2d 188, 192–193 (1997) (holding that the trial court did not err by excluding the victim's earlier reports of sexual abuse because "[t]oo many sexual details remain unaccounted for after consideration of what defendant hoped to prove with the prior sexual conduct"), *reh'g denied, appeal denied.*

## II.

■ The next issue is whether the trial court abused its discretion by responding

---

14. We have previously mentioned that the similarity of a prior sexual act provides guidance on whether the victim had the knowledge to imagine a molestation charge. In *Morrison v. State,* 824 N.E.2d 734 (Ind.Ct. App.2005), *trans. denied,* the defendant was convicted of two counts of attempted criminal deviate conduct as class B felonies and two counts of sexual battery as class D felonies. The offenses "involved oral sex, attempted anal intercourse, and 'humping,' as well as the touching of [the victim's] penis." *Id.* at 741. At trial, the trial court excluded testimony that a coworker of the victim had previously touched the victim's penis. *Id.* at 739. This court addressed the defendant's argument that the trial court's erroneous exclu-

sion of testimony gave the jurors the erroneous indication that the victim was ignorant about sexual relations between men and thus the victim's "allegation of sexual contact with Morrison must be true because in his innocence there was no other way for him to gain the information." *Id.* at 741. The court noted that "the evidence reveals that [the victim] did not confuse the incidents in question, as the prior event involved solely the touching of [the victim]'s penis, while the incident at issue involved oral sex, attempted anal intercourse, and 'humping,' as well as the touching of [the victim's] penis." *Id.* Thus, we concluded that the prior sexual act was not similar to the charged act.

to the jury's questions. During deliberations, the jury asked the trial court "[W]hat specific touching is each count attributable to? Is count one bottom touching? Is count two breast touching? Is count three penis touching?" Transcript at 341. The trial court immediately contacted counsel and referred the jury back to their instructions. Specifically, the trial court sent the bailiff back into the jury room with a note that counsel were not available to the trial court in order to directly answer the question, but they had their instructions, and they could refer to their instructions to determine whether or not that assisted them with their questioning. *Id.* at 342.

The jury then asked, "[M]ay we please view the statements given by both the victims and the defendant with the detective." *Id.* at 341. Apparently, the jury had a "second request regarding the first question," and the trial court brought counsel back together for a "face-to-face" with the trial court regarding the jury's question. *Id.* at 342. While the trial court and counsel were discussing the situation, the jury informed the bailiff that "they're done" and "[t]hey just need a[sic] answer to their question." *Id.* at 354. The trial

court sent a second note [15] instructing the jury "regarding their question, of what specific touching is each count attributable, the answer—the Court's answer is that it is the job of the jury to determine how to complete the verdict forms for each count charged." [16] *Id.* at 367. The jury found Oatts guilty as charged.

Oatts argues that the procedure used by the trial court in responding to the jury question failed to comply with Ind.Code § 34-36-1-6, which provides:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

Specifically, Oatts argues that "the trial court did not bring the jury into the courtroom to determine if there was a disagreement as to testimony or a desire to be informed of the law under IC 34-36-1-6." Appellant's Brief at 10.

---

**15.** On appeal, Oatts argues that "[a] subsequent response, to which defense counsel objected, was given to the jury before they indicated they had reached a verdict." Appellant's Brief at 11 (citing Transcript at 372). The transcript reveals the following exchange:

[Oatts's Attorney]: Did the—did the Court submit that to the jury?
THE COURT: It was submitted.
[Oatts's Attorney]: Okay. For the record I just wanted to make it clear.
THE COURT: Yes.
[Oatts's Attorney]: Prior to the jury coming back with the verdict—prior to the jury coming back with the verdict, your note was submitted to the jury, right.
THE COURT: Yes. And I thought we made a record of that, that it was going to them,

and in fact it was handed off before they actually communicated that they had reached a verdict. . . .

Transcript at 372. The State "disagrees with [Oatts]'s assertion that the trial court's response was submitted to the jury before they had indicated that they had arrived at a verdict." Appellee's Brief at 17. We agree with the State. Based on the exchange relied upon by Oatts, we cannot say whether the first note or the second note was given to the jury before the jury indicated that it had reached a verdict. Moreover, our reading of the record indicates that the trial court did not give the jury the second note until after the jury had indicated that it had reached a verdict.

**16.** The record does not contain the actual answer given to the jury.

A trial court's decision whether to respond to jury questions is treated on appeal in the same manner as jury instructions. *Gantt v. State*, 825 N.E.2d 874, 877 (Ind.Ct.App.2005). Instructing the jury lies within the sole discretion of the trial court. *Id.* Jury instructions are to be considered as a whole and in reference to each other. *Id.* An error in a particular instruction will not result in reversal unless the entire jury charge misleads the jury as to the law in the case. *Id.* Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. *Id.* An error is to be disregarded as harmless unless it affects the substantial rights of a party. Ind. Trial Rule 61.

Oatts argues that *Gantt*, 825 N.E.2d 874, is analogous. In *Gantt*, the trial court instructed the jury that "you must decide who you believe and who you disbelieve if you can't believe two or more" witnesses and gave a lengthy explanation of its understanding of this principle. *Id.* at 877. The trial court stated, in part, that if two witnesses give contradictory stories, "I cannot disbelieve both of them. They both can't be right. Somebody is not right." *Id.* On appeal, we held that the trial court's instruction was an erroneous statement of the law and invaded the province of the jury to determine credibility and accept or reject evidence as it sees fit. *Id.* at 878. We held, in part, that "[t]he jury may choose to believe neither witness, believe aspects of the testimony of each, or believe the testimony but also believe in a different interpretation of the facts than that espoused by the witnesses, among other possibilities." *Id.* We concluded that the error was not harmless because the evidence consisted primarily of two accounts and the jury's focus in deliberations was necessarily the credibility of these two witnesses. *Id.* at 879.

Oatts relies on *Gantt* and argues that "[h]ere the trial court led the jury to believe that it should proceed to reach a verdict regardless of any lack of guidance as to what conduct constituted a basis for guilt." Appellant's Brief at 12. However, Oatts does not challenge the trial court's instructions regarding the elements of molestation as a Class C felony.[17] We cannot say that the trial court's answer to the jury's question emphasized any particular instruction or that Oatts was prejudiced by the trial court's answer. To the extent that Oatts argues that the jury should have been instructed on a different act for each of the three counts, we note that the

---

17. The trial court instructed the jury regarding the elements of child molesting as a class C felony for each of the counts. Specifically, Instruction Number 6 stated, in part:

To convict the defendant, Arthur Oatts, of Child Molest, a Class C Felony as charged in Count I of the charging Information, the State must prove each of the following elements beyond a reasonable doubt.

That the defendant, Arthur Oatts, on or between, March 23, 2007 and March 25, 2007,

1. Did knowingly,
2. perform or submit to any fondling or touching with A.S., a child who was then under the age of fourteen (14) years of age, that is: eight (8) years old,

3. with the intent to arouse or satisfy the sexual desires of Arthur Oatts and/or A.S.,

If the State fails to prove each of these elements beyond a reasonable doubt, you should find the defendant, Arthur Oatts, not guilty of Child Molest, a Class C Felony, Count I, as charged in the Information.

If the State does prove each of these elements beyond a reasonable doubt, you should find the defendant, Arthur Oatts, guilty of Child Molest, a Class C Felony, Count I, as charged in the Information.

Appellant's Appendix at 70–71. The trial court also gave identical instructions for Counts II and III. *See* Instructions 7 and 8; Appellant's Appendix at 72–73.

trial court entered judgment only on the first count out of a concern for double jeopardy. Consequently, we cannot say that Oatts's substantial rights have been prejudiced. *See Williams v. State*, 830 N.E.2d 107, 112 (Ind.Ct.App.2005) (holding that the trial court's response that the "instructions and verdict forms are your best guidance" was essentially a denial of the jury's request for clarification and therefore harmless error and that the jury was not provided with any "information" under Ind.Code § 34–36–1–6), *trans. denied.*

For the foregoing reasons, we affirm Oatts's conviction for child molesting as a class C felony.

Affirmed.

ROBB, J. and CRONE, J. concur.