Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2014, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KIMMERLY A. KLEE**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL T. SMITH, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1304-CR-172 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Anne Flannelly, Judge Pro Tem
Cause No. 49G04-1201-FC-5961

**January 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Judge**

## Case Summary and Issues

Michael T. Smith appeals his conviction for child molesting as a Class C felony. Smith raises two restated issues on appeal: 1) whether the trial court abused its discretion in admitting testimony identifying Smith; and 2) whether the trial court abused its discretion in excluding testimony about the victim's sexual history. Concluding that the trial court did not abuse its discretion on either count, we affirm.

## Facts and Procedural History

C.K. ("Mother") first met Smith when their families lived in the same neighborhood. At some point Mother and her husband, T.K. ("Father"), divorced, and Mother and Smith began a relationship and moved in together. In the divorce, Father was granted custody of the four children (the "Children") he and Mother had together, although the Children spent every other weekend visiting Mother at the home she shared with Smith.

In the summer of 2009, K.K., one the Children, was ten years old. On weekends visiting Mother, K.K. would sometimes sleep in the bed with Mother if the two had stayed up late watching a movie. On those occasions, Smith, who worked nights, would get into bed with them when he came home from work. On one such occasion, K.K. fell asleep in the bed with Mother, on her side and facing Mother. K.K. was awakened by a noise and then felt someone in the bed behind her touch her between her thighs and then on her vagina. The room was dark and she could not see who it was, but she testified that she knew it was Smith because it was a grown-up, rather than a skinny kid like both of her brothers (who were twelve and fourteen at the time); the person had a "rough skin-type touch" which was different from her brothers, transcript at 61; her brothers always

2

slept in their own room and even if they had come into Mother's bedroom, they would have told K.K. to scoot over or would have wakened Mother; and there were no other grown-up men in the house that weekend, no other adult male ever slept in Mother's bed, and no other adult male was in the house when she woke up the next morning. K.K. first felt hands lift up her shorts and move them to the side, and then touch her thighs and move up toward her vagina. She then felt something other than a hand, which "had to be penis [sic] or something else. [She wasn't] sure." Tr. at 35. During this time, K.K. did not move or say anything. The touching stopped, and a short time later Mother woke up and went to the restroom. K.K. waited a couple of minutes and then followed Mother into the restroom, never looking back to see who was in the bed. K.K. did not tell Mother what had just happened, and ended up spending the night in the living room after Mother went back to bed. The next morning, K.K. did not tell anyone what had happened, nor did she tell Father when she went back to his house after the weekend. On following weekends, K.K. made excuses for why she did not want to go to visits at Mother's house, and when she did go for visits she would avoid spending time alone with Smith.

In December of 2010, Mother and Smith broke up, and a couple of months later Mother and Father reconciled and moved back in together. In August of 2011, K.K. told Mother what had happened with Smith, and Mother and Father called the police.

Smith was charged with child molesting in January of 2012. A jury trial was held in March of 2013, and the jury found Smith guilty as charged. Smith was sentenced to four years, with one year executed on work release and three years suspended to probation. This appeal followed. Additional facts will be supplied as necessary.

3

## I. Standard of Review

When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and we will only reverse the ruling upon a showing of abuse of discretion. Gibson v. State, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. We consider the evidence most favorable to the trial court's ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. Id.

## II. Admission of Identifying Testimony

Smith first complains about the admission of a portion of K.K.'s testimony at trial. K.K. acknowledged that she did not see the person who touched her the night of the incident, and Smith argues that her testimony identifying Smith as the perpetrator was therefore not within her personal knowledge and violated Indiana Evidence Rules 602 and 704(b).[1]

At trial, K.K. was questioned by the State regarding the incident, including the following exchange:

> **[State]**: Okay. Now, you said that you felt touching between your legs. Who was touching you between your legs?
> **[K.K.]**: [Smith].
> **[State]**: How do you know that it was [Smith]?

---

[1] Indiana Evidence Rule 602 states, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. . . . Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness." Indiana Evidence Rule 704(b) states, "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions."

**[K.K.]**: Because if it was [sic] my brothers, they would have said something because they're my brothers. They would have told me to scoot over or they would have woke [sic] my mom up.

**[State]**: Okay. So I understand how you know it was not your brothers, but what makes you think it was [Smith]?

**[K.K.]**: Because I know it was a grown-up. It wasn't just like a little kid or anything, like a boy.

**[State]**: Okay. Were there any grown-up men in the house?

**[K.K**.]: No.

***

**[State**: Okay. The touching that you felt first between your legs, could you tell which part of [Smith's] body was touching you?

> **[COUNSEL FOR SMITH]**: Objection, Your Honor, as to the identification that it was [Smith's] body. Assumes—
>
> **THE COURT**: Response?
>
> **[COUNSEL FOR SMITH]**: I'm sorry.
>
> **[STATE]**: I don't understand the objection.
>
> **[COUNSEL FOR SMITH]**: It assumes facts not in evidence.
>
> **[STATE]**: She stated —
>
> **THE COURT**: Overruled.
>
> **[STATE]**: Thank you.
>
> **THE COURT**: You may proceed.

Tr. at 30-31. K.K. gave testimony explaining how she had determined that it was Smith who was in the bed with her that night, and her testimony shows that she was testifying from personal knowledge as to the events that night and the information that led her to conclude it was Smith. Additionally, it does not appear that K.K. impermissibly testified as to her opinion of Smith's guilt, but rather she testified as to her recollection of events that night from which the jury could draw its own conclusion about Smith's guilt or innocence. See Steinberg v. State, 941 N.E.2d 515, 526 (Ind. Ct. App. 2011) ("Rule 704(b) does not prohibit presentation of evidence that leads to an inference, even if no witness could state [an] opinion with respect to that inference.") (citation omitted), trans. denied. To the extent that Smith is arguing that K.K.'s testimony included too many uncertainties to be believable, that goes to credibility rather than admissibility, and we do

5

not reweigh credibility on appeal. We conclude that neither Indiana Evidence Rule 602 nor Rule 704(b) was violated.

Smith also argues that the facts of this case are similar to those in Kindred v. State, 973 N.E.2d 1245, 1247 (Ind. Ct. App. 2012), trans. denied, and that, as there, the admitted testimony here was improper and "had a tendency to bolster the credibility of the victim, rendering the child virtually impeachable as to critical issues of fact." Brief of Appellant at 11. On the contrary, the improper evidence there was course-of-investigation evidence involving hearsay, rather than the victim's testimony about the events during the underlying incident as we have here. We do not agree that K.K.'s testimony improperly bolstered her own credibility, and we conclude that the trial court did not abuse its discretion in admitting K.K.'s testimony.

### III. Exclusion of Victim's History

Smith also contends that the trial court improperly excluded evidence about K.K.'s past sexual conduct and that failure to allow voir dire of K.K. violated Smith's Sixth Amendment right to confront witnesses.[2] The State counters that the evidence was properly excluded under our Rape Shield, Indiana Evidence Rule 412.

Indiana Evidence Rule 412 provides that:

(a) In a prosecution for a sex crime, evidence of the past sexual conduct of a victim or witness may not be admitted, except:
> (1) evidence of the victim's or of a witness's past sexual conduct with the defendant;

---

[2] The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Smith also cites to the Indiana Constitution, but provides no separate analysis under our state constitution, and thus any argument derived therefrom is waived. Myers v. State, 839 N.E.2d 1154, 1158 (Ind. 2005) ("Where a party, though citing Indiana constitutional authority, presents no separate argument specifically treating and analyzing a claim under the Indiana Constitution distinct from its federal counterpart, we resolve the party's claim on the basis of federal constitutional doctrine and express no opinion as to what, if any, differences there may be under the Indiana Constitution.") (quotations and citation omitted), cert. denied, 574 U.S. 1148 (2006).

(2) evidence which shows that some person other than the defendant committed the act upon which the prosecution is founded;
(3) evidence that the victim's pregnancy at the time of trial was not caused by the defendant; or
(4) evidence of conviction for a crime to impeach under Rule 609.

In addition to the four enumerated exceptions above, there is a common law exception to allow evidence of a prior accusation of rape if: (1) the victim has admitted that his or her prior accusation of rape is false; or (2) the victim's prior accusation is demonstrably false. Oatts v. State, 899 N.E.2d 714, 721 (Ind. Ct. App. 2009).

Before trial began, the State moved in limine to exclude, in relevant part, "any evidence, questioning or comments concerning any type of past relationships or sexual conduct of any State's witness, which is inadmissible." Tr. at 10. Smith did not object, and the court granted the motion. During the trial, the following exchange occurred:

> **[Counsel for Smith]**: Okay. Now, this other thing, you don't know what it was, right?
> **[K.K.]**: Yes.
> **[Counsel for Smith]**: Do you know how to describe what it felt like?
> **[K.K.]**: I don't really know how to describe it.
> **[Counsel for Smith]**: All right. You had said at one point during your direct examination that it may be a penis. Do you remember that?
> **[K.K.]**: Yes.
> **[Counsel for Smith]**: Okay.
>> **[COUNSEL FOR SMITH]**: Approach?
>> **THE COURT**: Yes.
> **SIDE BAR COLLOQUY OUT OF HEARING OF JURY**
>> **[COUNSEL FOR SMITH]**: I want to confirm that she's never — she's never been with whoever had a penis or anything like that.
>> **THE COURT**: You can't do that?
>> **[COUNSEL FOR SMITH]**: That was not in her deposition —
>> **[STATE]**: That's —
>> **[COUNSEL FOR SMITH]**: — and that (unintelligible).
>> **THE COURT**: That doesn't matter.
>> **[COUNSEL FOR SMITH]**: Okay.
>> **THE COURT**: All right.
>> **[COUNSEL FOR SMITH]**: Thank you.
> **END SIDE BAR COLLOQUY**

> **[Counsel for Smith]**: Can you describe anything about this other thing?
> **K.K.]**: It didn't feel like a hand. It was just — it just felt really — I don't know how to describe it.

Tr. at 47-48.

Smith does not argue that the common law exception or any of the enumerated exceptions to the rape shield apply here, but rather that his Sixth Amendment right to confront witnesses was violated. We have stated before that the right to cross-examination is not absolute, and that the "Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish," and therefore that the right to confrontation may sometimes bow to other legitimate interests in the criminal trial process. Oatts, 899 N.E.2d at 722 (quoting Delaware v. Fensterer, 474 U.S. 15, 20 (1985)). Our focus is on ensuring that the trial court's exclusion of evidence did not prevent the defendant from conducting a full, adequate, and effective cross-examination. Id.

We believe that K.K. could have been questioned outside the presence of the jury, but conclude that it was not required to do so to preserve Smith's rights. Smith's complaint revolves around K.K.'s use of the word "penis." We note that we are not particularly surprised that a ten-year-old with two brothers would know the word, particularly given that her testimony is peppered with other anatomical references, including to her vagina. Moreover, had the court explored K.K.'s background, Smith implies it would have found that K.K. was sexually innocent—exactly the inference that the jury was likely to default to on its own. See Oatts, 899 N.E.2d at 723-24 (discussing the "sexual innocence inference theory," which "is based on the premise that because

8

most children of tender years are ignorant of matters relating to sexual conduct, a child complainant's ability to describe such conduct may persuade the jury that the charged conduct in fact occurred.") (citation omitted).

In Oatts, we adopted an approach that requires the defendant in a case like this, when arguing that the victim's sexual history should have been admitted, to "show that the prior sexual act occurred and that the prior sexual act was sufficiently similar to the present sexual act to give the victim the knowledge to imagine the molestation charge." Id. at 725. Smith does not argue that there is any prior sexual act, much less that there is one that is similar to K.K.'s description of the incident here.

We have previously noted that only a total denial of access to relevant and substantial evidence bearing upon the credibility of a crucial witness against the accused presents a constitutional issue under the Sixth Amendment. Borosh v. State, 166 Ind. App. 378, 336 N.E.2d 409, 412 (1975). We cannot say that Smith was totally denied access to relevant and substantial evidence bearing upon K.K.'s credibility, nor that he was denied a full, adequate, and effective cross-examination. He was able to cross-examine K.K. as to the events on the night of the incident, how she came to her conclusions regarding the identity of her molester, her feelings about Smith, how the details of her testimony differed from those at her deposition, and more. We therefore conclude that the trial court did not abuse its discretion in excluding testimony regarding K.K.'s sexual history, or lack thereof.

## Conclusion

Concluding that the trial court did not abuse its discretion in admission or exclusion of K.K.'s testimony, we affirm.

Affirmed.

BARNES, J., and BROWN, J., concur.