

**FILED**

Dec 18 2017, 10:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven Knecht
Vonderheide & Knecht, P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Miguel Alvarado,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

December 18, 2017

Court of Appeals Case No.
12A04-1704-CR-818

Appeal from the Clinton Circuit
Court

The Honorable Bradley K. Mohler,
Judge

Trial Court Cause No.
12C01-1505-FA-477

**Bradford, Judge.**

# Case Summary

[1] In 2011, Appellant-Defendant Miguel Alvarado began living with M.L., who was born in 2005, and M.L.'s mother ("Mother"), marrying her the next year. While living with M.L. and Mother until 2013, Alvarado molested M.L. several times, penetrating her orally, vaginally, and anally with his penis. In 2015, the State charged Alvarado with nine counts of Class A felony child molesting.

[2] Prior to trial, Alvarado sought to introduce evidence that M.L. had been molested by Mother's new boyfriend as recently as early 2015, on the basis that this molestation provided M.L. with the knowledge to fabricate her accusations against Alvarado. The trial court denied Alvarado's motion to introduce the evidence in question. After the State's closing argument, Alvarado moved to reopen evidence on the basis that the State had opened the door to the evidence of molestation by Mother's boyfriend. The trial court denied Alvarado's motion, entered judgment of conviction for four counts of child molesting, and sentenced him to an aggregate sentence of ninety years of incarceration. Alvarado contends that the trial court abused its discretion in refusing to admit evidence that M.L. was molested by Mother's boyfriend and in denying him leave to reopen evidence. Because we disagree, we affirm.

# Facts and Procedural History

[3] M.L. was born in May of 2005 to Mother and her then-husband. In 2011, Mother and Alvarado had been in a relationship for three years and were living

in Frankfort with M.L. and one of Mother's other three daughters. Mother and Alvarado married in June 2012. From 2011 until Alvarado and Mother divorced in 2013, Mother was consistently employed, while Alvarado had periodic employment.

[4] Typically, after returning home from work, Mother would take her other daughter to the grocery store, leaving M.L. alone with Alvarado at home. One day after Mother left, Alvarado entered M.L.'s room as she was playing with her dolls. Alvarado was fully dressed when he entered M.L.'s room but quickly removed his pants and underwear. Alvarado took a belt, bent M.L. over, and spanked her with the belt. When he finished hitting M.L., Alvarado removed his shirt.

[5] When M.L. stood, Alvarado forced her against the wall of her bedroom. M.L. started to scream, but Alvarado covered her mouth with his hand. Alvarado penetrated M.L.'s vagina, anus, and mouth with his penis. On other days, Alvarado performed these sexual acts on M.L. in the same manner every time. In early 2015, M.L., by this time almost ten years old, reported these incidents to her grandmother. Around this time, M.L. made similar allegations involving Mother's boyfriend, *i.e.*, that he had "forced her to perform oral sex as well as vaginal and anal sex." Ex. A. The Kokomo Police Department interviewed the boyfriend on March 27, 2015, and filed an application for an arrest warrant on April 30, 2015.

[6]     On May 22, 2015, the State charged Alvarado with nine counts of child molesting as Class A felonies. Before trial, Alvarado moved to introduce evidence that M.L. was molested by Mother's ex-boyfriend as recently as January 2015. On February 13, 2017, the trial court held a confidential hearing on Alvarado's motion. After this hearing, the trial court issued an order denying Alvarado's motion, holding that he would be "precluded from introducing evidence of a subsequent molest and/or allegation of molest[.]" Appellant's App. Vol. II p. 125.

[7]     Alvarado's trial was held on February 28, 2017. M.L. told the jury that she referred to her breasts as her "upper private[,]" her vagina as her "down private[,]" and her buttocks as her "[b]ack private." Tr. Vol. II 153–54. M.L. referred to a man's penis as the man's "down private[.]" Tr. Vol. II 156–57. M.L. used the same or similar terms when describing Alvarado's molestation of her, testifying that Alvarado touched her with his "down private" in her mouth, "down private[,]" and her "back down private[.]" Tr. Vol. II pp. 170–71. M.L. testified that Alvarado hurt her when his "down private" went inside of her "down private" and that she knew it was inside her body "[c]ause [she] could feel it." Tr. Vol. II pp. 178–79. On cross-examination, M.L., then in the sixth grade, testified that she had learned about good and bad touches in school but could not remember when.

[8]     After M.L. finished testifying, Alvarado again raised the rape-shield issue and proffered the arrest warrant application for Mother's boyfriend, which contained the allegation that he had forced M.L. into oral, vaginal, and anal

sex. The warrant application was admitted for purposes of an offer of proof as Exhibit A, and also noted: "[M.L.] also alleged that her step father [sic], Miguel Avarado [sic] molested her in the same manner." After hearing argument, the trial court reaffirmed the exclusion of evidence of the subsequent molestation.

[9] When the State completed its closing argument, Alvarado asked for a recess to request the evidence be reopened on the basis that the State had opened the door to the excluded evidence of M.L.'s subsequent molestation during the argument. The trial court denied the motion. The jury found Alvarado guilty of four counts of Class A felony child molesting, and the trial court sentenced him to an aggregate sentence of ninety years of incarceration.

# Discussion and Decision

## I. Admission of Evidence that M.L. Was Molested by Another Person After Alvarado Molested Her

[10] Alvarado contends that the trial court abused its discretion in refusing to admit evidence that she had been molested by another person as recently as early 2015, or after her alleged molestation by Alvarado but before she reported it. In general, the admissibility of evidence is within the sound discretion of the trial court. *Curley v. State*, 777 N.E.2d 58, 60 (Ind. Ct. App. 2002), *trans. denied*. We will reverse a trial court's decision on the admissibility of evidence only upon a showing of an abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and

circumstances before the court, or if the court has misinterpreted the law. *Id.* The Court of Appeals may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court. *Moore v. State*, 839 N.E.2d 178, 182 (Ind. Ct. App. 2005), *trans. denied*. We do not reweigh the evidence, and consider the evidence most favorable to the trial court's ruling. *Hirsey v. State*, 852 N.E.2d 1008, 1012 (Ind. Ct. App. 2006), *trans. denied*.

[11] Indiana Evidence Rule 412 governs the admissibility of evidence of past sexual conduct and provides, in part, as follows:

> (a) Prohibited Uses. The following evidence is not admissible in a civil or criminal proceeding involving alleged sexual misconduct:
>
> > (1) evidence offered to prove that a victim or witness engaged in other sexual behavior; or
> >
> > (2) evidence offered to prove a victim's or witness's sexual predisposition.
>
> (b) Exceptions.
>
> > (1) Criminal Cases. The court may admit the following evidence in a criminal case:
>
> ….
>
> > > (C) evidence whose exclusion would violate the defendant's constitutional rights.

[12] Alvarado contends that exclusion of evidence that another person molested M.L. impermissibly infringes his constitutional right to confront the witnesses

against him,[1] specifically his right to adequately cross-examine them. The right to cross examination, however, is not absolute. *Tague v. Richards*, 3 F.3d 1133, 1137 (7th Cir. 1993). "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). "Furthermore, the right to confront witnesses 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Tague*, 3 F.3d at 1137 (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)).

[13] In arguing that the exclusion of the evidence in question violated his right to cross-examination, Alvarado relies on the so-called "sexual innocence inference theory." The theory is based on the premise that, because young children are generally presumed to be ignorant of sexual matters, a child victim's mere ability to describe sexual conduct may be compelling enough to convince a jury that the charged conduct must have occurred. *See Oatts v. State*, 899 N.E.2d 714, 724 (Ind. Ct. App. 2009) (citing *Grant v. Demskie*, 75 F. Supp. 2d 201, 213 (S.D.N.Y. 1999)). Consequently, the defense should have the opportunity to offer evidence that the victim had acquired sufficient knowledge from another source to fabricate a charge against the defendant, including evidence that the

---

[1] The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him[.]" Article I, section 13, of the Indiana Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall have the right … to meet the witnesses face to face[.]"

child had acquired sexual experience with someone else before he or she accused the defendant. *Id.* (citing *Grant*, 75 F. Supp. 2d at 213).

[14] In *Oatts*, the court adopted what has been referred to as the "compromise approach" to questions involving the sexual innocence inference theory. *Id.* at 724–25. Pursuant to this approach, the burden is on the defendant "to show that the prior sexual act occurred and that the prior sexual act was sufficiently similar to the present sexual act to give the victim the knowledge to imagine the molestation charge." *Id.* at 724. The *Oatts* court disposed of the issue before it by concluding that "Oatts failed to show that either the prior molestation or videotape were similar to the current offense." *Id.* at 725.

[15] Be that as it may, we need not concern ourselves with any of the above unless Alvarado has established that we may assume that the jury will infer M.L.'s innocence of sexual matters.[2] At the time M.L. first reported Alvarado's alleged molestation of her, she was two or three months shy of her tenth birthday. The record also demonstrates, however, that M.L. had received "good touch, bad touch" education while at school, prior to making these allegations at trial. Although M.L. also testified that she could not remember when she had been taught about good and bad touches, this is a possible source of knowledge sufficient to fabricate a molestation accusation against Alvarado. Even if we were to assume that M.L. was young enough to generally support an

---

[2] The *Oatts* court did not, and did not need to, reach this question.

inference of sexual ignorance, we conclude that that inference was rebutted. We consider it worth noting that, despite expressing grave concern about being denied the right to present evidence of possible alternate sources of sexual knowledge, Alvarado did not pursue the issue of M.L.'s "good touch, bad touch" education at any length or argue that *it* was the source of M.L.'s sexual knowledge. Under the circumstances, we cannot say (and Alvarado has not established) that the average juror would assume that M.L. lacked the knowledge to fabricate allegations of molestation.[3] Consequently, Alvarado has failed to establish that the trial court abused its discretion in declining to admit evidence that M.L. had been molested by Mother's boyfriend.

## II. Whether the Trial Court Abused its Discretion in Refusing to Allow Alvarado To Reopen Evidence

[16]     When a party asks to re-open its case after the close of evidence, the trial court's decision to grant that request lies within its sound discretion. *Flynn v. State*, 497 N.E.2d 912, 914 (Ind. 1986). Reversal must be predicated upon an actual abuse of discretion, *i.e.*, a decision that was "'clearly untenable or unreasonable[,]'"

---

[3] The "sexual innocence inference" theory of admissibility is not without its critics. The Supreme Court of Iowa has described the theory as "based on unsubstantiated assumptions and fears about what a jury may infer from the complaining witness's testimony." *State v. Clarke*, 343 N.W.2d 158, 163 (Iowa 1984). While we certainly do not reject the sexual innocence inference theory outright, we would suggest that if a defendant is, in fact, genuinely concerned about the jury unduly inferring sexual innocence of a young witness, we see no reason why those concerns could not be fully explored in *voir dire*. Yet, our research has uncovered not one case nationwide (including this one) in which a defendant in a child molestation case has thought to address such concerns during jury selection.

and a showing of prejudice to the substantial rights of the complaining party.

*Id*. at 915 (quoting *Allman v. State*, 253 Ind. 14, 20, 235 N.E.2d 56, 59 (1968)).

> Among the factors which weigh in the exercise of discretion are whether there is any prejudice to the opposing party, whether the party seeking to reopen appears to have rested inadvertently or purposely, the stage of the proceedings at which the request is made, and whether any real confusion or inconvenience would result from granting the request.

*Flynn*, 497 N.E.2d at 914.

[17] The State's closing summarized M.L.'s testimony as follows:

> But, [M.L.] did say multiple times that it did happen at this South Jackson Street [home]. She described the room where it happened in detail. She talked about the cars on the bed. She talked about the toys that were in there. She talked about the blankets and the walls. She described what it felt like. She described what the defendant did and the order he did it in on – when asked, "What did he do next? How did he come in the room?" She had a clear story about what happened. In particular the order. When I said, "Did he take off his clothes?" "No. He took off his bottoms. He left his shirt on." Uhm, she was really clear about what the defendant did and the order he did it in. Also you have a child that is remembering sex acts as they actually happen with adults. Uhm, She -- an -- and I know she was very hard to hear and probably very hard to -- to see cause [sic] she was bundled up uhm, but she did make the motion about what happened when the defendant's uhm, penis was inside her. And you as a jury can decide if that is consistent with that sexual act.

Tr. Vol. III pp. 63–64.

[18] Alvarado contends that the prosecutor's statement that "[a]lso you have a child that is remembering sex acts as they actually happen with adults" created the impression with the jury that Alvarado was the only possible source of sexual knowledge. Whatever force this argument may have is premised on the jury inferring M.L.'s sexual ignorance. As we have already concluded, however, Alvarado has failed to convince us that we can assume that the jury inferred M.L.'s sexual ignorance, especially since she had undergone the "good touch, bad touch" program prior to the allegations. With this in mind, the prosecutor's statement is nothing more than a contention that M.L.'s testimony was plausible and consistent with adult sexual activity. There is no question that a prosecutor is absolutely allowed to argue that a witness's testimony was plausible and consistent. The trial court did not abuse its discretion in refusing to allow Alvarado to reopen his case and introduce evidence that M.L. was molested by Mother's ex-boyfriend.

[19] We affirm the judgment of the trial court.

Robb, J., and Crone, J., concur.