

**FILED**

May 20 2015, 6:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix LLP
Huntington, Indiana

ATTORNEY FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Erica L. Jackson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 20, 2015

Court of Appeals Case No.
35A02-1410-CR-770

Appeal from the Huntington Superior
Court
The Honorable Jeffrey R.
Heffelfinger, Judge
Cause No. 35D01-1309-FD-195,
35D01-1310-CM-654

**Bailey, Judge.**

# Case Summary

[1] Erica L. Jackson ("Jackson") appeals her convictions for two counts of Theft, as Class D felonies,[1] and six counts of Check Deception, as Class A misdemeanors.[2]  We affirm.

# Issues

[2] Jackson presents two issues for review:

  I.  Whether the trial court abused its discretion by refusing a tendered instruction on Check Deception as a lesser-included offense of Theft; and

  II.  Whether the trial court abused its discretion by admitting evidence obtained in an unduly suggestive photo lineup.

# Facts and Procedural History

[3] On July 31, 2012, Jackson's checking account had a balance of negative $1,836.51.  During the following month, at various locations in Huntington County, Jackson presented seven checks drawn on that checking account.  In October of 2012, Jackson presented an eighth check.  The majority of these checks included a hand-written driver's license number with two numbers

---

[1] Ind. Code § 35-43-4-2(a).  This statute has been revised, effective July 1, 2014, to provide that Theft may be a misdemeanor or a Level 5 or 6 felony.  We refer to the version of the statute in effect at the time of Jackson's offenses.

[2] I.C. § 35-43-5-5.

transposed. All the checks were dishonored and certified mail notifications were returned to senders.

[4] The State charged Jackson with six counts of Check Deception, corresponding with small checks presented at convenience stores. The State charged Jackson with two counts of Theft, as a result of checks presented to SS Peter and Paul Church, whereby Jackson purchased Bingo cards and received hundreds of dollars of cash in excess of the purchases.

[5] On September 5, 2014, Jackson was brought to trial before a jury. She was convicted on all counts. On September 30, 2014, the trial court imposed concurrent three-year sentences for the Theft counts, with one year suspended to probation. For the Check Deception counts, the trial court sentenced Jackson to concurrent one-year sentences, all suspended to probation. Jackson now appeals.

# Discussion and Decision

## *Instruction on Lesser-Included Offense*

[6] Without elaboration, the trial court refused the following instruction proffered by the defense:

> The law permits the jury to determine whether the Accused is guilty of certain charges which are not explicitly included in the indictment/ information. These additional charges which the jury may consider are called included offenses. They are called included offenses because they are offenses which are very similar to the charged offense. Usually the only difference between the charged offense and the

included offense is that the charged offense contains an element that is not required to be proven in the included offense, or that the charged offense requires a higher level of culpability than the included offense.

If the State proves each of the essential elements of the charged offense, then you need not consider the included offense(s), however if you find the State failed to prove each of the essential elements of the charged offense, you must find the accused not guilty of the charged offense.

If you do find the Accused not guilty of the charged offense then you may consider whether the Accused is guilty of the included offense(s). You must not find the accused guilty of more than one crime for each count.

In this case, the accused is charged with Theft. For the offense of Theft, the State of Indiana is required to prove the following:

Erika [sic] Jackson, in Huntington County, Indiana, knowingly and intentionally exerted unauthorized control over the property of another person with the intent to deprive the person of the value or use of the property. If the State failed to prove each of these elements beyond a reasonable doubt, you must find the accused not guilty of Theft, a Class D Felony, as charged in Count 1 and Count 2.

You may then consider any lesser included crime. The crime of check deception is included in the charged crime of Theft. For the offense of check deception, the State of Indiana is required to prove the following: A person who knowingly or intentionally issues or delivers a check, a draft, or an order on a credit institution for the payment of or to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business, commits check deception, a Class A misdemeanor. If the State failed to prove each of these elements beyond a reasonable doubt, you must find the accused not guilty of Check Deception.

If the State did prove each of the elements of the crime of check deception beyond a reasonable doubt, you may find the accused guilty of check deception a Class A misdemeanor.

(App. 149.) The trial court has broad discretion in instructing the jury and we generally review its instructional determinations only for an abuse of discretion. *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). Jackson contends that the

refusal of her tendered instruction constitutes an abuse of discretion because she was entitled to have the jury instructed on a factually lesser-included offense.

[7] In *Wright v. State*, 658 N.E.2d 563 (Ind. 1995), our Indiana Supreme Court set forth the proper analysis to determine when a trial court should, upon request, instruct the jury on a lesser included offense of the crime charged. The analysis of the charging information and the elements contains three steps: (1) a determination of whether the lesser included offense is inherently included in the crime charged; if not, (2) a determination of whether the lesser included offense is factually included in the crime charged; and, if either, (3) a determination of whether a serious evidentiary dispute exists whereby the jury could conclude the lesser offense was committed but not the greater. *Id.* at 566-67. If the third step is reached and answered in the affirmative, the requested instruction should be given on the inherently or factually included lesser offense. *Horan v. State*, 682 N.E.2d 502, 506 (Ind. 1997).

[8] An offense is inherently included if the alleged lesser included offense "may be established by proof of the same material elements or less than all the material elements defining the crime charged or … the only feature distinguishing the alleged lesser included offense from the crime charged is that a lesser culpability is required…" *Wright*, 658 N.E.2d at 566. "If the charging instrument alleges that the means used to commit the crime charged include all of the elements of the alleged lesser included offense, then the alleged lesser included offense is factually included in the crime charged." *Id.* at 567.

[9] Pursuant to Indiana Code Section 35-43-4-2, a person "who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft." Pursuant to Indiana Code Section 35-43-5-5, a person "who knowingly or intentionally issues or delivers a check, a draft, or an order on a credit institution for the payment of or to acquire money or other property, knowing that it will not be paid or honored by the credit institution upon presentment in the usual course of business, commits check deception." Here, the information did not specify the means by which Jackson allegedly exerted unauthorized control over cash belonging to SS Peter and Paul Church. However, it was readily apparent in the presentation of argument and evidence that the State contended Jackson obtained the cash by presenting checks she knew would be dishonored.

[10] As such, the State does not disagree with Jackson that Check Deception was a factually lesser-included offense of Theft as charged. Rather, the State contends that the decision to give or refuse the instruction on the factually included offense would turn upon the presence or absence of a serious evidentiary dispute as to whether the lesser offense was committed while the greater was not. According to the State, there was no serious evidentiary dispute.

[11] A serious evidentiary dispute exists where the jury can conclude that the lesser offense was committed and the greater offense was not. *Chanley v. State*, 583 N.E.2d 126, 130 (Ind. 1991). In determining whether there is a serious evidentiary dispute, *Wright* and its progeny dictate that the evidence presented by

both the State and the defense must be taken into account. *Webb v. State*, 963 N.E.2d 1103, 1107 (Ind. 2012).

[12] The State elicited testimony that an employee of Fabulous 105, an entertainment venue that SS Peter and Paul Church rented for Bingo games, received checks in August of 2012 drawn on Jackson's checking account. At that time, the account was already significantly overdrawn. On each occasion, Bingo cards costing approximately $35 to $40 were purchased with $250 checks; excess cash was tendered to the person presenting the checks. Jackson testified that she was not the individual who presented those checks. She asserted that her checks had been stolen and used by another person. More specifically, Jackson claimed that she was a victim of identity theft.

[13] In other words, Jackson did not deny that the acts charged by the State were committed. She claimed that another individual was the perpetrator. As there was no controversy regarding whether a lesser offense was committed while a greater offense was not, the trial court did not abuse its discretion by refusing the instruction.[3]

---

[3] We also note that the proffered instruction, purportedly based upon a pattern jury instruction, was erroneous with reference to relevant statutory language, stating that the mens rea for Theft was "knowingly *and* intentionally" as opposed to "knowingly *or* intentionally." App. 149; I.C. § 35-43-4-2 (emphasis added.)

## *Photo Array*

[14] Prior to trial, Jackson moved to suppress evidence that Sherry Metz ("Metz"), the owner of Fabulous 105, and Taumara MacDonald ("MacDonald"), an employee who sold Bingo cards, had each identified Jackson from a photo array. The photo array included jail intake photographs of five women and a Bureau of Motor Vehicles photograph of Jackson.

[15] After a hearing, the motion to suppress was denied. At trial, Metz and MacDonald each made an in-court identification of Jackson. Each also acknowledged having signed beneath Jackson's photograph in an array. Jackson unsuccessfully objected to the admission of State's Exhibits 5 and 6, the signed photo arrays, on grounds that the arrays were "unduly suggestive." (Tr. 131, 148.)

[16] The admission of evidence is within the trial court's discretion and the decision is reviewable for an abuse of discretion. *Allen v. State*, 813 N.E.2d 349, 360 (Ind. Ct. App. 2004). However, the identification of a defendant must comport with the standards of due process. *Id.* If an out-of-court identification procedure was unduly suggestive, testimony relating to it is inadmissible. *Id.* The task of this Court is to determine whether, under the totality of the circumstances, the identification process was conducted in such a manner that it created a substantial likelihood of irreparable misidentification. *Id.* Our Indiana Supreme Court has held that a photo array is impermissibly suggestive only where the array is accompanied by verbal communications or the

photographs in the display include graphic characteristics that distinguish and emphasize the defendant's photograph in an unusually suggestive manner. *Id.* *(citing Bell v. State*, 622 N.E.2d 450, 455 (Ind. 1993) *overruled on other grounds by Jaramillo v. State*, 823 N.E.2d 1187 (Ind. 2005)).

[17] Even when an unnecessarily suggestive pretrial confrontation has occurred, an in-court identification is permissible if the State has satisfied its burden to establish by clear and convincing evidence that, independent of the unconstitutional confrontation, an independent basis for the witness's in-court identification exists. *Heiman v. State*, 511 N.E.2d 458, 460 (Ind. 1987). The factors to be considered include the witnesses' opportunity to view the criminal when the crime was committed, their degree of attention at the time, the accuracy of their prior descriptions, their level of certainty in the pre-trial identification and the length of time between the crime and the identification. *Id.*

[18] Jackson claims that the trial court abused its discretion by admitting State's Exhibits 5 and 6 and related testimony because Jackson's photograph was a higher quality close-up causing her features to be more distinguishable than those of the women in jail intake photographs. We acknowledge that law enforcement officers compiling a photo array are not required to "perform the improbable if not impossible task of finding four or five other people who are virtual twins to the defendant." *Pierce v. State*, 267 Ind. 240, 246, 369 N.E.2d 617, 620 (1977). Here, our examination of the photo array does not lead to the conclusion that the distinction identified by Jackson is critical such as to likely

lead to misidentification. Each of the photographs is of sufficient clarity to allow an examination of facial features.

[19] Moreover, Metz and MacDonald each had an independent basis for in-court identification of Jackson, having encountered Jackson at Fabulous 105 during business hours. MacDonald testified that she was "fairly certain" Jackson was the woman to whom she gave Bingo cards and cash. (Tr. 130.) According to MacDonald, Jackson's eyes and neck tattoo were distinguishing features. Metz was "100% certain" that Jackson was the woman in Fabulous 105 who had presented checks. (Tr. 148.) According to Metz, Jackson was at Fabulous 105 on at least three occasions in August of 2012, typically with her boyfriend, described as a thin black man "always" wearing a baseball cap. (Tr. 145.) Metz considered Jackson's hairstyle, which she called a "poof" style, to be distinguishing. (Tr. 145.) Further, Metz had "prior dealings with" Jackson six years earlier. (Tr. 146.)

[20] Under the totality of the circumstances, the trial court did not abuse its discretion in admitting pretrial identification evidence.

# Conclusion

[21] Jackson did not establish that the trial court abused its discretion by refusing her proffered instruction, nor did Jackson establish that the trial court abused its discretion in the admission of evidence.

[22] Affirmed.

Riley, J., and Barnes, J., concur.