Terrance SWANN, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0210–CR–507.

Court of Appeals of Indiana.

June 13, 2003.

richment." *Indianapolis Raceway Park,* 179 Ind.App. at 561, 386 N.E.2d at 727.

John Pinnow, Greenwood, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Terrance Swann ("Swann") was convicted of two counts of murder [1] and one count of robbery,[2] the latter as a Class C felony, in Marion Superior Court. He was sentenced to serve consecutive sixty-five year terms for each murder conviction and a concurrent term of eight years for the robbery conviction, for an aggregate sentence of 130 years. He appeals and argues that the trial court abused its discretion when it excluded evidence concerning a false confession he gave to police in a prior murder investigation. Finding that the evidence was properly excluded, we affirm.

### Facts and Procedural History

At approximately 5:00 p.m. on November 3, 1999, Officer Brent Miller ("Officer Miller") of the Indianapolis Police Department was dispatched to 2427 North Oxford Street on the eastside of Indianapolis. When he arrived at that residence, Officer Miller noted that there were signs of forced entry around the frame of the front door. As he entered the residence, Officer Miller observed that a female was lying face down on the floor next to the couch in the living room wearing a T-shirt, but no pants. The female, later identified as Crystal Davenport ("Davenport"), had a fatal gunshot wound in the center of her forehead. Officer Miller also discovered the body of Michael Haddix, Jr. ("Haddix") in the back bedroom of the residence. Haddix had gunshot wounds to his right shoulder and arm, and a fatal wound to the back of his head. An autopsy performed on the morning of November 4, 1999, revealed that Davenport and Haddix died

---

1. Ind.Code § 35–42–1–1 (1998 & Supp.2002). 2. Ind.Code § 35–42–5–1 (1998).

twenty-four to forty-eight hours before the autopsy.

In December 1999, Detective Andy Starks ("Detective Starks") was investigating the murder of Anthony Johnson ("Johnson"). On December 10, 1999, Detective Starks received an anonymous telephone call from an individual concerning the Johnson murder investigation. The caller, Swann, asked Starks to meet him in the parking lot of the Old Country Buffet restaurant on 38th Street. Detective Starks met with Swann, who was a friend of Johnson's, and Swann gave Detective Starks some information relevant to the investigation.

On January 5, 2000, Detective Starks spoke with Swann again about the Johnson murder. Swann was incarcerated at that time on a matter unrelated to this case. During their conversation, Swann told Detective Starks that he had been involved in an eastside robbery and murder in which a male and a female had been killed. Tr. pp. 73–74. Swann also told Detective Starks specific details about the murders, including the fact that the male and the female had been killed in separate rooms. Tr. p. 75. Detective Starks relayed that information to Detective Tom Tudor ("Detective Tudor"), the officer investigating the double murder of Davenport and Haddix.

On February 8, 2000, Starks asked Swann questions about the double murder that had been prepared by Detective Tudor. In response to the questions, Swann stated that the male victim was shot in the head and chest, and the female victim was shot in the head, but maybe also the chest area. Ex. Vol., Defendant's Ex. B. Swann also stated that the female was shot in the living room, and the male was shot in the bedroom. *Id.*

On March 27, 2000, Detective Tudor placed Swann under arrest and took his statement after Swann waived his Miranda rights. Swann stated that Johnson and Corey Spurlock ("Spurlock") told him that there was money and marijuana at Haddix's residence. Armed with guns and wearing rubber gloves, they then went to Haddix's residence intending to steal the money and marijuana. They were also accompanied by a woman named Tasha. When they arrived, Tasha knocked on the door. When Davenport opened the door, Swann grabbed her, while Spurlock and Johnson ran to the back of the house. Davenport struggled with Swann and kicked him. During the struggle, Swann heard several gunshots fired in the back of the house. Swann stated that he panicked, grabbed his gun, and shot Davenport as he pushed her away from him. He told Detective Tudor that he was one or two feet away from Davenport when he shot her and that he shot her in the head. Swann stated that he shot Davenport in the living room and Davenport was wearing a T-shirt, but no pants. He also stated that Haddix was wearing boxer shorts. Swann, Johnson, and Spurlock also took marijuana and money from the house. Ex. Vol., State's Ex. 10.

On March 28, 2000, Swann was charged with two counts of murder, two counts of felony murder, and two counts of robbery. His first trial resulted in a hung jury except for the count of felony murder of Davenport, which resulted in a mistrial. Swann was tried for a second time on August 12, 2002. Prior to the second trial, one count of robbery was dismissed. Therefore, the remaining counts tried during the second trial were two counts of murder, one count of felony murder of Haddix, and one count of robbery. At trial, Swann presented an alibi defense and argued that his confession was false.

Both Reverend Oscar Crear and Reverend William Gary testified that Swann was in Elkhart, Indiana, attending a revival

service from November 1 to November 3, 1999. Tr. p. 206; Ex. Vol., Defendant's Ex. E1, p. 8. Reverend Crear testified that he and Swann arrived late for the November 1 evening services. Ex. Vol., Defendant's Ex. E1, p. 10. Both Reverends Gary and Crear testified that Swann did not attend the November 2 services. Tr. p. 207, Ex. Vol., Defendant's Ex. E1, p. 13. However, Reverend Crear stated that he and Swann went to lunch with Reverend Gary on November 2. Ex. Vol., Defendant's Ex. E1, p. 12. Swann and both Reverends Crear and Gary testified that Swann attended the November 3 evening service. Tr. pp. 208, 232; Ex. Vol., Defendant's Ex. E1, p. 15. Reverend Gary testified that they all had lunch on that day as well, but in a prior statement, Gary indicated that Swann was not at lunch that day. Tr. pp. 209, 211. Reverend Crear testified that Swann was not at lunch on November 3. Ex. Vol., Defendant's Ex. E1, p. 15. Both Reverend Crear and Swann stated that they returned to Indianapolis in the early morning hours of November 4, 1999. Tr. pp. 232–33; Ex. Vol., Defendant's Ex. E1, p. 16.

Swann testified that he gave a false confession because he was given food and cigarettes when he was brought over from the Marion County Jail where he was incarcerated. Tr. p. 234. He stated that he heard other inmates discussing the double murder on the eastside and also got information about the double murder from Johnson. Tr. p. 238. Swann testified that he did not kill or assist Johnson and Spurlock in killing Davenport and Haddix.

Swann also attempted to enter into evidence the fact that he had given a false confession in a prior murder investigation and that he could not have committed that murder because he was incarcerated at the time. He also attempted to enter into evidence a Marion County JUSTIS record

in support of that proposed testimony. Tr. pp. 189–90. The trial court ruled that any evidence that Swann had previously given a false confession in another murder investigation was irrelevant. Tr. p. 193. Therefore, Swann made an offer to prove that Detective Starks would testify that Swann falsely confessed to the murder of Kareem Abdullah and gave details about that murder, which were consistent with the circumstances surrounding it. Tr. pp. 253–55. The State maintained that Detective Starks would only testify that Swann told him that he had information about the Abdullah murder, but that Detective Starks could not recall whether Swann stated that he was actually involved in the Abdullah murder. Tr. p. 256.

The jury found Swann guilty on all four counts. The trial court entered a judgment of conviction on the counts of murder of Davenport, felony murder of Haddix, and robbery. He was sentenced to serve consecutive terms of sixty-five years for each murder conviction and a concurrent term of eight years for the robbery conviction, for an aggregate sentence of 130 years. Swann appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Swann argues that the trial court abused its discretion when it excluded his proffered evidence concerning his false confession to a prior murder, and in doing so, the court denied Swann his right to fully present his defense. The decision to admit or exclude evidence is a matter within the sound discretion of the trial court. *Pickens v. State,* 764 N.E.2d 295, 297 (Ind. Ct.App.2002), *trans. denied.* An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* We afford the decision to exclude evidence great deference on appeal, and reverse only when a manifest abuse of discretion

denies the defendant a fair trial. *Price v. State,* 765 N.E.2d 1245, 1248 (Ind.2002).

▮ The trial court excluded the evidence of Swann's prior false confession on the grounds that it was irrelevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. In addressing Swann's claim that the evidence is relevant and admissible, we "must determine whether the evidence tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the accused." *Brown v. State,* 747 N.E.2d 66, 68 (Ind.Ct.App.2001) (citing *Carnahan v. State,* 681 N.E.2d 1164, 1166 (Ind.Ct. App.1997)).

In this case, the only direct evidence that Swann participated in the double murder was his confession. In his defense, Swann argued that he was in Elkhart at the time Davenport and Haddix were murdered, and that he lied to the police when he confessed. Swann testified that he confessed to the murder because "[Detective Starks] was giving me food and cigarettes and I don't get that at the jail and I didn't think he would really—at the time, at first, I didn't think he would take me serious, but it turned out he did." Tr. p. 234.

Swann argues that the "evidence the court excluded showed Swann falsely confessed to another murder and he provided details matching the circumstances of that murder. The excluded evidence was relevant on the issue of whether Swann's inculpatory statements in this case were credible." Br. of Appellant at 17.

▮ However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

Ind. Evid. R. 404(b); *see also Heavrin v. State,* 675 N.E.2d 1075, 1083 (Ind.1996) ("[A] trial court abuses its discretion when it admits evidence of extrinsic acts that are relevant to no issue other than character and to proof of behavior in conformity with that character."). "[T]he rule acts as an appropriate restraint on admissibility of evidence about events or acts that are by definition largely extraneous to those for which a defendant is on trial." *Garland v. State,* 788 N.E.2d 425, 429 (Ind.2003). Pursuant to Indiana Rule of Evidence 404(b), Swann's attempt to introduce evidence of his prior false confession improperly sought to use proof of that prior extrinsic act to bolster his statement that he lied when giving his confession in this case. Therefore, under the rationale of Rule 404(b), the trial court's exclusion of Swann's prior false confession was not error.

▮ In addition, to warrant reversal, any error in the exclusion of evidence must be "inconsistent with substantial justice." Ind. Trial R. 61. "A reviewing court must disregard any error 'which does not affect the substantial rights of the parties.'" *Benson v. State,* 762 N.E.2d 748, 752 (Ind. 2002) (citing T.R. 61). "Moreover, the error is harmless if the evidence of guilt was overwhelming and the defendant was allowed to present his defense even if not as completely as he desired." *Miles v. State,* 777 N.E.2d 767, 772 (Ind.Ct.App.2002) (citing *Whited v. State,* 645 N.E.2d 1138, 1140 (Ind.Ct.App.1995)).

▮ First, we note that when Swann made his offer to prove with regard to the prior false confession, defense counsel indicated that Detective Starks would have testified that Swann had told police that he shot Kareem Abdullah as Abdullah was climbing out of a window and a 40 caliber Glock and an AK–47 were used in the shooting. Tr. p. 254. Defense counsel also stated that Detective Starks would testify

that these details were consistent with the actual circumstances surrounding the Abdullah murder. *Id.* However, the State informed the court that Detective Starks would have testified only that Swann knew certain details surrounding the Abdullah murder, but that Starks could not recall Swann ever stating that he was actually involved in the murder. Tr. p. 256. It is not clear from the record why Detective Starks was not called to testify regarding the prior false confession during the offer to prove, especially given the disputed nature of his proposed testimony and the fact that he was a witness in this case.

When he confessed in the present case,[3] Swann gave specific details about the double murder at issue, including the following facts: 1) Davenport was shot in the living room of the house and Haddix was shot in the back bedroom; 2) Haddix was shot multiple times and he was wearing boxer shorts; 3) Davenport was wearing a T-shirt and no pants and she was shot near the front door by the couch; and, 4) Davenport was shot in the head at close range. These details were confirmed by the evidence discovered at the crime scene.

Importantly, Swann was allowed to testify that he lied when he gave his confession because the police officers were giving him food and cigarettes. He also was able to fully present his alibi defense. However, Swann's knowledge of the specific details of the murders of Davenport and Haddix constituted overwhelming evidence of his guilt.

Affirmed.

KIRSCH, J., and MATTINGLY–MAY, J., concur.

---

**3.** We note that Swann continued to maintain his involvement in the murders of Davenport and Haddix even after he was placed under arrest.