

FILED

Oct 22 2019, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Randall J. Hammond
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jessie L. Watson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 22, 2019

Court of Appeals Case No.
18A-CR-2984

Appeal from the Allen Superior
Court

The Honorable Frances C. Gull,
Judge

Trial Court Cause No.
02D05-1711-F1-19

**Altice, Judge.**

## Case Summary

[1] A jury found Jessie Watson guilty of Level 1 felony child molesting, Level 4 felony child molesting, and Level 4 felony incest, when the evidence established that he had committed various acts of child molesting against his eleven-year-old-daughter, T.R. Watson appeals his convictions, claiming that the trial court erred in excluding evidence of various internet searches, thus violating his right to cross-examine a witness. Watson also alleges that the trial court improperly permitted T.R. to testify that she was telling the truth about statements that she made to a forensic interviewer and an examining nurse after the incidents. As a result, Watson contends that the State improperly vouched for T.R.'s testimony and bolstered the testimony of the nurse and interviewer.

[2] We affirm.

## Facts & Procedural History

[3] Mary and Jessie Watson were married in 2001, and T.R. was born in 2005. Watson is T.R.'s biological father, but Mary not her biological mother. Watson and Mary separated in July of 2016, and T.R. continued to live with Watson in Allen County. T.R., however, still regularly visited and communicated with Mary. Sometime after Mary had moved from the residence, Watson told T.R. that some visitors would be stopping by in the evening. Watson told T.R. to undress, wrap

herself in a towel, and place a white and blue sleeping mask over her eyes so she could not see the visitors.

[4] Watson made T.R. wait in a back bedroom. At some point, T.R. felt hands touch her "[a]ll over," including her "private areas" and chest. *Transcript Vol. II* at 129. T.R. also felt something "kind of floppy" on her face that eventually entered her mouth. T.R. tried to resist but was unsuccessful. T.R. then felt "something come out" of the object in her mouth, and she spit out the substance. *Id.* at 129-30.

[5] Shortly after this incident, Watson told T.R. to remove the mask because the visitor had left. Watson then directed T.R. to rinse her mouth and brush her teeth. Similar episodes occurred on other occasions. During the final incident, T.R. positioned the mask in such a way that she could see the "visitor." T.R. recognized Watson and his cologne, which T.R. identified as the same smell that was present when the "visitors" had previously been at the residence.

[6] T.R. told Mary what had occurred and showed her the sleeping mask that Watson kept in his bedroom. Mary contacted the police and an officer stopped by the house. T.R., however, would not tell the officer what had occurred because Watson had told her not to, and T.R. was afraid that she would no longer be able to see Mary if she disobeyed Watson.

[7] On October 27, 2016, Watson called T.R. and told her that another visitor would be arriving later that evening. In response, T.R. called Mary and arrangements were made for T.R.'s aunt to stop by the residence and pick up T.R. T.R. packed her belongings along with Watson's sleeping mask and waited outside for her aunt.

T.R.'s aunt picked up T.R. and drove to T.R.'s grandparents' home where the police were contacted. T.R. had placed the sleeping mask on a table at her grandparents' house.

[8] Watson appeared at the grandparents' home, saw the mask, and told them that they should have called him instead of the police. Watson then grabbed the mask and left. Thereafter, T.R. was transported to the Bill Lewis Center for Children (Lewis Center), where she spoke with Sara Drury, a forensic interviewer. T.R. admitted to Drury that Watson had sexually abused her and provided details about the incidents. T.R. was then examined by nurse Leslie Cook, where she also recounted to Cook what had occurred. T.R. told Cook that Watson was responsible for the molestations.

[9] The State charged Watson with two counts of felony child molesting, and one count of incest, alleging that the offenses had occurred "[s]ometime during the period of time between the 20th day of July, 2016, and the 25th day of October, 2016[.]" *Appellant's Appendix* at 17. Watson requested a jury trial and the day before trial, Watson's defense counsel informed the trial court that Watson wished to offer evidence concerning various internet searches of a sexual nature that were made on a tablet between July 29, 2016, and October 12, 2016. These searches included "sex games," "daddy sleeping with daughter," and "f_ _ king games." *Transcript Vol. III* at 33-34. In response, the State argued that the evidence was inadmissible under Indiana Evid. Rule 412 because the evidence that Watson sought to admit involved T.R.'s prior sexual behavior and/or sexual predisposition. The State also asserted that Watson had failed to provide proper

notice under Indiana Evid. Rule 403(c) that he intended to offer such evidence, and it was not established who had conducted the internet searches. The trial court agreed that the matter should have been addressed prior to trial and ruled the evidence inadmissible under Evid. R. 403 and 412. The trial judge commented that it might reconsider the issue later at trial.

[10] At the trial that commenced on October 16, 2018, Watson made an offer of proof, indicating that he would have asked the investigating detective about information from a report that referred to "a history of someone engaging in a search on the tablet for pornographic sites such as 'daddy sleeping with daughter' and 'a father abusing a daughter.'" *Transcript Vol. III* at 33; *Defendant's Exhibit* A. The evidence established that Watson and T.R. shared the tablet and both had used it on different occasions. The trial court affirmed its prior ruling and held the evidence inadmissible.

[11] At some point during the trial, the State asked T.R. on direct examination if she recalled "speaking with someone" (Drury) at the Lewis Center, and T.R. responded that she did. The Prosecutor then asked T.R. if she remembered telling Drury "the truth about what had happened." *Transcript Vol. II* at 143. T.R. responded in the affirmative, and defense counsel did not object. When T.R. was asked about the statements that she had made to Drury, Watson's counsel objected on the grounds that the State was asking leading questions and "bolstering about the . . . interview." *Id.* The trial court sustained the objection. When T.R. was later asked whether she had been truthful with Cook about the physical examination and the circumstances, T.R. responded "yes." *Id.* Watson did not

object, and both Drury and Cook subsequently testified about the statements that T.R. had given to them at the Lewis Center.

[12] Following the presentation of evidence, the jury found Watson guilty on all counts. The trial court subsequently sentenced Watson to an executed aggregate term of forty years, and he now appeals.

## Discussion and Decision

## I. Exclusion of Evidence

[13] Watson argues that the trial court abused its discretion in excluding evidence of the tablet internet searches. Watson contends that the exclusion of this evidence and the fact that he was not able to thoroughly question the investigating detective about those searches violated his right of cross-examination under the Sixth Amendment to the United States Constitution and Article 1, Section 13 of the Indiana Constitution.[1]

---

[1] The State initially contends that Watson has waived review of the trial court's exclusion of the internet searches because he did not file a motion proposing to offer this evidence pursuant to Evid. R. 412(b)(1). This rule states that a party who intends to offer evidence that is embodied within the exceptions to the general rule that disallows the admission of evidence pertaining to a victim's or witness's sexual behavior or predisposition, must file a motion that "specifically describes the evidence and states the purpose for which it is to be offered at least (10) ten days prior to trial. . . ." Evid. R. 412(c)(1)(A) and (B). As Judge Brown acknowledged in *Oatts v. State*, 899 N.E.2d 714, 719-20 n.6 (Ind. Ct. App. 2009), there is a split of authority regarding waiver and the ten-day notice requirement under Evid. R. 412. *Contrast Sallee v. State*, 785 N.E.2d 645, 651 (Ind. Ct. App. 2003) (holding that the defendant's failure to comply with Evid. R. 412(b) precluded her from presenting evidence of the victim's past sexual history and resulted in waiver of the issue on appeal), *trans. denied; and Graham v. State*, 736 N.E.2d 822, 826 (Ind. Ct. App. 2000) (holding that the defendant's failure to comply with the procedural mandate of Evid. R. 412(b) was fatal to his attempt to introduce evidence of prior false rape allegations); *with Sallee v. State*, 777 N.E.2d 1204, 1210 n. 6 (Ind. Ct. App. 2002) (rejecting the State's argument that the defendant had waived any claim of error by failing to comply with the procedural requirements of Evid. R. 412 and holding that "the requirement that the proponent of the

The decision to admit or exclude evidence is a matter within the trial court's sound discretion. *Swann v. State*, 789 N.E.2d 1020, 1023 (Ind. Ct. App. 2003), *trans. denied*. An abuse of discretion occurs if a trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Packer v. State*, 800 N.E.2d 574, 578 (Ind. Ct. App. 2003), *trans. denied.* The decision to exclude evidence is given great deference on appeal and will be reversed only when a manifest abuse of discretion denies the defendant a fair trial. *Swann*, 789 N.E.2d at 1022-23. There is a strong presumption that the trial court acted properly. *Anderson v. State*, 681 N.E.2d 703, 706 (Ind. 1997).

In cases involving alleged sexual misconduct, evidence offered to prove that a victim or witness engaged in other sexual behavior or evidence offered to prove a victim's or witness's sexual predisposition is generally not admissible under Indiana Evid. R. 412, the Rape Shield Act.[2] The enumerated exceptions to this rule are as follows:

> (1) *Criminal Cases.* The court may admit the following evidence in a criminal case:
>
>> (A) evidence of specific instances of a victim's or witness's sexual behavior, if offered to prove that someone other

---

evidence file a written motion ten days prior to trial applies only if the evidence sought to be introduced fits within one of the exceptions to the general rule''), *trans. denied*. In any event, we need not address the State's claim of waiver because, as discussed *infra,* the trial court did not abuse its discretion in excluding evidence that related to the internet searches.

[2] *See* Ind. Code § 35-37-4-4.

than the defendant was the source of semen, injury, or other physical evidence;

(B) evidence of specific instances of a victim's or witness's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor; and

(C) evidence whose exclusion would violate the defendant's constitutional rights.

Evid. R. 412(b).

[16] Watson directs us to this court's opinion in *Oatts*, 899 N.E.2d at 720, claiming that the trial court should have permitted him to introduce the proposed evidence to counter the so-called "sexual innocence inference" theory. This theory is based on the premise that

> because most children of tender years are ignorant of matters relating to sexual conduct, a child complainant's ability to describe such conduct may persuade the jury that the charged conduct in fact occurred. To demonstrate that the child had acquired sufficient knowledge to fabricate a charge against the defendant, the theory reasons, the court should allow the defense to offer evidence that the child acquired sexual experience with someone else before he or she accused the defendant.

*Oatts*, 899 N.E.2d at 724 (quoting *Grant v. Demskie*, 75 F.Supp.2d 201, 213 (S.D.N.Y. 1999)). In *Oatts*, this Court adopted what has been referred to as the "compromise approach" to questions involving the sexual innocence inference theory. *Id.* at 724-25. Under this approach, the burden is on the defendant "to

show that the prior sexual act occurred and that the prior sexual act was sufficiently similar to the present sexual act to give the victim the knowledge to imagine the molestation charge." *Id.* at 724. The *Oatts* court disposed of the issue before it, concluding that the defendant "failed to show that either the prior molestation or videotape were similar to the current offense." *Id.* at 725.

[17] Here, Watson appears to claim that if the jury had been allowed to hear evidence of the internet searches, any implication of the "sexual innocence inference theory" would have been rebutted and would have supported his defense that T.R. had fabricated her sexual abuse claims. However, Watson never established that it was T.R. who performed the internet searches at issue. In fact, Watson acknowledged that the evidence he wished to introduce consisted of "a history of *someone* engaging in a search on the tablet." *Transcript Vol. III* at 33 (emphasis added). Further, as the State pointed out when this issue was addressed prior to trial, there was a lack of evidence as to who had access to the tablet when the searches were conducted. The prosecutor noted that the tablet had "repeatedly bounced back and forth between the defendant and the victim." *Transcript Vol. II* at 10.

[18] As the proponent of the evidence, Watson had the burden of demonstrating that it was T.R. who performed the various internet searches. *See C.S. v. State*, 71 N.E.3d 848, 852-53 (Ind. Ct. App. 2017) (holding that the proponent of evidence has the burden to establish its admissibility). In light of these circumstances, the jury could just as easily have concluded that Watson performed the internet searches, given the fact that the tablet had been shared by both T.R. and Watson. The jury could also have determined that even if T.R. had conducted the searches, they

were in response to Watson's acts of molestations.   Because there was a lack of evidence as to who had performed the searches, the trial court properly excluded the evidence.

[19] As for Watson's contention that the exclusion of this evidence violated his fundamental right to cross-examine witnesses, the right to cross-examination is not absolute. *Oatts*, 899 N.E.2d at 722.  While the Confrontation Clause under the Sixth Amendment[3] guarantees an opportunity for effective cross-examination, we note that it does not provide for cross-examination that is effective in whatever way, and whatever extent, that a defendant might wish. *Alarado v. State*, 89 N.E.3d 442, 446 (Ind. Ct. App. 2017), *trans. denied.*  That said, trial judges retain wide latitude to impose reasonable limits based on concerns about, among other things, interrogation that is repetitive or only marginally relevant. *Thornton v. State*, 712 N.E.2d 960, 963 (Ind. 1999).  Moreover, our Supreme Court has determined that Indiana's Rape Shield statute does not violate a defendant's Sixth Amendment right to confront witnesses absent a showing of actual impingement on cross-examination. *Thomas v. State,* 471 N.E.2d 677, 679 (Ind. 1984).

[20] As discussed above, Watson failed to establish who conducted the internet searches on the tablet.  This fact alone justified the exclusion of the evidence, as it was mere speculation that T.R. possessed the tablet when the searches were conducted.  Thus, we cannot say that the evidence was relevant or that its

---

[3] The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]"

probative value outweighed its prejudicial effect. *See Williams v. State,* 681 N.E.2d 195, 201 (Ind. 1997) (finding no error in excluding evidence that would shift the jury's attention away from the defendant's actions to the past acts of the victim). Thus, it has not been established that exclusion of the tablet internet search evidence violated Watson's right to cross-examine witnesses under the Sixth Amendment.

[21] Watson also asserts that the exclusion of this evidence violated his right to cross-examine witnesses under Article 1, Section 13 of the Indiana Constitution, which provides that "[I]n all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face[.]" Watson, however, fails to advance a separate argument under this provision. Hence, the claim is waived. *See, e.g., In re Paternity of G.R.G.,* 829 N.E.2d 114, 124 (Ind. Ct. App. 2005) (observing that the appellant waived his claim that the trial court's order constituted an improper prior restraint on free speech under the Indiana Constitution when he failed to direct us to any authority to support that contention); *see also White v. State*, 772 N.E.2d 408, 411 (Ind. 2002) (holding that the defendant's claim of an alleged search and seizure violation under Article 1, Section 11 of the Indiana Constitution was waived when he failed to provide a separate analysis under that provision).

[22] Waiver notwithstanding, Indiana's confrontation clause contains both the right to cross-examine witnesses and the right to meet witnesses face-to-face. *Brady v. State*, 575 N.E.2d 981, 988 (Ind. 1991). In addition to the fact that the identity of the individual who performed the searches on the tablet was not established, there is no showing that Watson was deprived of any face-to-face meetings with the State's

witnesses as they presented their testimony at trial. For these reasons, we cannot say that the trial court's exclusion of the searches violated Watson's right to "fully and effectively probe and challenge those witnesses during trial before the trier of fact through cross-examination" under the Indiana Constitution. *See id.*

## II. Improper Vouching and Bolstering Testimony

[23] Watson claims that his convictions must be reversed because the State improperly vouched for T.R.'s testimony when the prosecutor asked T.R. on direct examination if she was being honest when she spoke with Drury, the forensic examiner, and Cook, the attending nurse, about the incidents. Watson also contends that this line of questioning improperly vouched for—and bolstered—the testimony of Drury and Cook in violation of Indiana Evid. Rule 704(b), which provides that "witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Vouching testimony results in an invasion of the province of the jurors in determining what weight they should place upon a witness's testimony. *Head v. State*, 519 N.E.2d 151, 153 (Ind. 1988).

[24] As set forth above, the prosecutor asked T.R. on direct examination if she remembered speaking with Drury, and T.R. responded that she did. The prosecutor then asked T.R. if she recalled telling Drury "the truth about what had happened," and T.R. responded in the affirmative, absent any objection from Watson. *Transcript Vol. II* at 143. When T.R. was questioned about the details of

the incidents that she had related to Drury, Watson's counsel objected on the grounds that the State was asking leading questions and was "bolstering about the . . . interview." *Id.* The trial court sustained the objection, and when the State subsequently questioned T.R. as to whether she was being truthful to Cook, the examining nurse, T.R. responded "yes," with no objection by Watson. *Id.*

[25] The trial court sustained Watson's objection to a portion of T.R.'s testimony. To the extent that Watson claims error in the admission of any of the other testimony to which he failed to object, that claim is waived. *See Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012) (observing that the defendant had objected to some parts of witnesses' alleged vouching testimony but not others, and that as to the testimony to which defendant had not posed an objection, any error was waived unless the defendant could establish fundamental error). Thus, we reject Watson's contention that defense counsel "object[ed] to the *line of questioning"* [and] preserved his claim of error." *Appellant's Brief* at 16 (emphasis supplied).

[26] In an effort to avoid waiver, Watson claims that fundamental error resulted when the State asked T.R. if she was being truthful and honest because it amounted to prohibited vouching testimony and it improperly bolstered the testimony of Cook and Drury. The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal. *Hoglund*, 962 N.E.2d at 1239. Fundamental error is an "extremely narrow exception to the waiver rule," and a defendant "bears the heavy burden of showing that a fair trial was impossible." *Harris v. State*, 76 N.E.3d 137, 139 (Ind. 2017). The claim of fundamental error is

available only "when the record reveals clearly blatant violations of basic and elementary principles [of due process], and the harm or potential for harm [can]not be denied." *Warriner v. State,* 435 N.E.2d 562, 563 (Ind. 1982). "[F]undamental error is a daunting standard that applies 'only in egregious circumstances'" where the trial judge should have corrected the situation sua sponte. *Knapp v. State*, 9 N.E.3d 1274, 1281 (Ind. 2014).

At trial, T.R. was duly sworn to tell "the truth, the whole truth, and nothing but the truth." *Transcript Vol. II* at 120-21. Because T.R. had agreed to provide truthful testimony and subsequently testified as to what she believed had happened to her with Watson, the jury certainly would not have been improperly influenced by the fact that T.R. believed her earlier descriptions of these events were truthful. It was simply T.R.'s acknowledgement that she believed her own account of events. We also reject Watson's contention that T.R.'s testimony had the effect of bolstering and vouching for Cook and Drury's testimony. Both witnesses recounted the statements that T.R. had made to them during their testimony. And neither testified about T.R.'s honesty or her propensity to tell the truth. In short, Watson has failed to establish fundamental error.

Judgment affirmed.

Brown, J. and Tavitas, J., concur.